UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE FRIDATOR TRUST,<br><br>　　　　　　　　　Plaintiff,<br><br>　　- against -<br><br>NEUBERGER BERMAN LLC and HSBC SECURITIES (USA) INC.<br><br>　　　　　　　　　Defendant. | 10 Civ. 5917 (ALC) (AJP)<br><br>**AMENDED COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff The Fridator Trust ("Fridator" or the "Trust"), by its attorneys Gibbons P.C., for its Amended Complaint against defendants Neuberger Berman LLC ("Neuberger") and HSBC Securities (USA) Inc. ("HSBC"), alleges as follows:

### NATURE OF THE ACTION

1.　In this action, plaintiff Fridator seeks the return of approximately $5 million of Trust assets that defendant Neuberger has wrongfully withheld, ostensibly to cover certain obligations and liabilities allegedly arising from foreign exchange transactions (the "FX transactions") that Neuberger allegedly entered for or in connection with the Fridator account at Neuberger. Fridator also seeks to recover the damages it has sustained and continues to sustain as a result of defendants' wrongful conduct in connection with the FX transactions, together with interest, costs and attorneys' fees and expenses.

### JURISDICTION AND VENUE

2.　This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because this is an action between citizens of the United States and a citizen of a foreign state, and the amount in controversy exceeds $75,000.00.

3. Venue properly lies in the Southern District of New York pursuant to 28 U.S.C. § 1391(a)(2).

4. This Court has personal jurisdiction over defendants because defendants have transacted and are transacting business in the State of New York and in this judicial district.

## PARTIES

5. Plaintiff Fridator is a trust organized under the laws of Manitoba, Canada and is located in Amsterdam, The Netherlands.

6. Upon information and belief, defendant Neuberger is a limited liability company organized under the laws of Delaware with its principal place of business in New York, New York.

7. Upon information and belief, defendant HSBC is a corporation organized under the laws of Delaware with its principal place of business in New York, New York.

## FACTUAL ALLEGATIONS

8. On or about December 27, 2004, Fridator entered into an Investment Advisory Agreement (the "Investment Advisory Agreement") with Lincoln Capital Fixed Income Capital Management Company, LLC ("Lincoln"), a subsidiary of Lehman Brothers Holdings, Inc. ("Lehman"), for Lincoln to manage Fridator's global fixed income portfolio account (the "Account") with an opening account value of approximately $40 million. (Lehman and its subsidiaries are also collectively referred to herein as "Lehman.")

9. On or about April 5, 2005, Lincoln changed its name to Lehman Brothers Asset Management LLC ("LBAM") and remained a subsidiary of Lehman.

10. On May 4, 2009, LBAM changed its name to Neuberger Berman Fixed Income Group LLC and, on May 5, 2009, became a subsidiary of Neuberger. Also on May 5, 2009,

Neuberger was spun off from Lehman through a management buyout of 51% of the company, and Lehman retained a 49% ownership interest (the "Buyout").

11. As a result of the Buyout, Neuberger acquired control of the Account and assumed LBAM's rights and obligations under the Investment Advisory Agreement and/or applicable law. (Lincoln, LBAM and Neuberger are also collectively referred to herein as "Neuberger.")

12. Pursuant to Section 2 of the Investment Advisory Agreement, Neuberger "accept[ed] the appointment as investment adviser and agree[d] to supervise and direct the investments of the Account in compliance with the initial investment guidelines" and any amended investment guidelines provided by Fridator.

13. Pursuant to Section 3 of the Investment Advisory Agreement, the parties agreed that, "[s]ubject to the Investment Guidelines, [Neuberger] shall have full discretionary authority . . . to (a) buy, sell, exchange, convert or otherwise trade in any stocks, bonds and other securities, including options, money market instruments and financial future instruments; [and] (b) place orders for the execution of such securities transactions with or through such brokers, dealers, or issuers as [Neuberger] may select . . . ."

14. Pursuant to Section 5 of the Investment Advisory Agreement, the parties agreed that Lehman would act as custodian for the Account pursuant to a separate written agreement between Fridator and Lehman.

15. On or about July 2, 2007, the parties entered into an Amendment to the Investment Advisory Agreement (the "Investment Advisory Amendment") providing that LBAM could delegate its investment advisory rights and functions for the Account to its affiliated investment advisers, including Neuberger.

#1754271 v1
109775-68511

16.  Pursuant to Exhibit B of the Investment Advisory Amendment, Fridator amended its investment guidelines for the Account authorizing Neuberger to hedge a portion of Fridator's portfolio to the Euro.

17.  On information and belief, during the period from July 2007 through September 2008, Neuberger entered into a series of FX transactions with Lehman and other third party financial institutions (the "Counterparties") on behalf of Fridator, including several FX transactions with HSBC as the Counterparty.

18.  Pursuant to various trade documents and applicable law, HSBC and Fridator were contractually obligated to one another to pay monies owed on the FX transactions on the settlement date for each transaction.

19.  HSBC owes to Fridator the amount of $1,056,524 on the FX transactions.

20.  On September 11, 2008, Fridator instructed Neuberger to transfer all of the securities and other assets in the Account to J.P. Morgan Chase Bank.

21.  On or about September 15, 2008, and before all of the Account assets could be transferred to J.P. Morgan Chase Bank, Lehman filed a voluntary petition for relief under Chapter 11 of the U.S. Bankruptcy Code.  As a result of the intervening bankrupcty, the settlements of the FX transactions were suspended.

22.  Despite Neuberger's duty to Fridator to ensure that the FX transactions were properly settled and that the Account was credited or debited for the FX transactions in a proper and timely fashion, Neuberger failed to take the necessary and timely actions required to ensure that HSBC paid to Fridator the $1,056,524 amount that it owes to Fridator on the FX transactions.

#1754271 v1
109775-68511

23.     On or about September 22, 2008, the remaining Account assets were transferred from the Lehman custodian account to Ridge Clearing and Outsourcing Solutions, Inc. ("Ridge Clearing") in anticipation of an ultimate transfer to a custodian account at Barclays Capital, Inc. ("Barclays").

24.     In or about February 2009, after Fridator initiated a transfer of the remaining Account assets from Ridge Clearing to Barclays, Neuberger withheld, or caused Ridge Clearing to withhold, approximately $5 million of Fridator's assets ostensibly because, as Neuberger advised at the time, those funds were needed to cover certain obligations and liabilities allegedly arising from the FX transactions that Neuberger allegedly entered into for or in connection with the Fridator Account at Neuberger.

25.     On information and belief, Neuberger wrongfully withheld not only the funds necessary for Fridator to satisfy its own alleged obligations and liabilities on the FX transactions (approximately $1.7 million), but *also* withheld approximately $3.3 million allegedly needed to cover the obligations and liabilities of Neuberger itself, Lehman and/or other Counterparties as to which Fridator had no responsibility.

26.     As a registered investment adviser and professional money manager, Neuberger owed Fridator contractual, fiduciary and other legal duties to properly supervise and manage the investments in the Account in the best interests and for the benefit of Fridator and, as part of those duties, to ensure that (a) the FX transactions were executed and settled in a proper and timely fashion and (b) the Account was credited or debited for the FX transactions in a proper and timely fashion.

27.     In addition, Neuberger had the obligation and duty to promptly return to Fridator the withheld funds once Neuberger knew, or should have known, and to the extent that, (a) the

#1754271 v1
109775-68511

funds were needed to satisfy Fridator's own alleged obligations and liabilities on the FX transactions and, in particular, (b) the funds were withheld to cover the obligations and liabilities of Neuberger itself, Lehman and/or other Counterparties as to which Fridator had no responsibility.

28.  Neuberger has breached its contractual, fiduciary and other legal duties to Fridator by, among other things, failing to properly supervise and manage the Account and to return the withheld funds, as alleged above.

29.  Further, despite Fridator's demand, Neuberger still has failed or refused to return any portion of the $5 million of Fridator funds wrongfully withheld from the Account since February 2009.

30.  HSBC has contractual and other legal duties to pay to Fridator the $1,056,524 trade proceeds that are due to Fridator on the FX transactions.

31.  HSBC has breached its contractual and other legal duties to Fridator by failing to make payment due to Fridator on the FX transactions.

## FIRST CAUSE OF ACTION

### (Breach of Contract Against Fridator)

32.  Fridator realleges and incorporates by reference paragraphs 1 through 31 above as if set forth fully herein.

33.  Pursuant to the Investment Advisory Agreement, Neuberger was obligated to properly manage and supervise the investments in the Fridator Account without any negligence, malfeasance or violation of law.

34.  As part of its contractual duties, Neuberger was obligated to ensure that the FX transactions were executed and settled in a proper and timely fashion, and that funds were

#1754271 v1
109775-68511

promptly credited or debited to the Account, as the case may be, and the account balance made available to Fridator for its own use and benefit.

35. By its actions and omissions as alleged above, Neuberger has breached its contractual obligations to Fridator.

36. Fridator has fully performed its obligations under the Investment Advisory Agreement.

37. As a direct and proximate consequence of Neuberger's breach of contract, Fridator has suffered and continues to suffer damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### (Breach of Fiduciary Duty Against Fridator)

38. Fridator realleges and incorporates by reference paragraphs 1 through 37 above as if set forth fully herein.

39. As a registered investment adviser and professional money manager, Neuberger had a fiduciary duty to supervise and manage the Account and handle the affairs and funds of Fridator with the utmost care and in the best interests of Fridator, and without any self-dealing or conflicts of interest.

40. By its actions and omissions as alleged above, Neuberger has breached its fiduciary duties to Fridator.

41. As a direct and proximate consequence of Neuberger's breach of its fiduciary duties, Fridator has suffered and continues to suffer damages in an amount to be determined at trial.

#1754271 v1
109775-68511

## THIRD CAUSE OF ACTION

### (Professional Negligence Against Fridator)

42. Fridator realleges and incorporates by reference paragraphs 1 through 41 above as if set forth fully herein.

43. As a registered investment adviser and professional money manager, Neuberger was expected and required to exercise the degree of care required of such professionals in similar circumstances with respect to the proper supervision and management of the Account, the execution and settlement of the FX transactions, and the handling and return of Fridator's funds.

44. By its actions and omissions as alleged above, Neuberger has breached its professional duty of care to Fridator.

45. As a direct and proximate consequence of Neuberger's breach of its professional duty of care, Fridator has suffered and continues to suffer damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### (Conversion Against Fridator)

46. Fridator realleges and incorporates by reference paragraphs 1 though 45 above as if fully set forth herein.

47. Neuberger's withholding of the funds in Fridator's Account was not authorized or justified by law, and was contrary to Fridator's instructions, and demand and legal right to have those funds promptly returned to Fridator.

48. By refusing to comply with Fridator's demand to have the withheld funds promptly returned to Fridator, as alleged above, Neuberger has converted Fridator's property in knowing violation of Fridator's rights.

8

49. By reason of the foregoing, Neuberger has unlawfully exercised possession and control over property of which Fridator is the rightful owner.

50. As a direct and proximate consequence of Neuberger's wrongful conduct, Fridator has suffered and continues to suffer damages in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION
### (Breach of Contract Against HSBC)

51. Fridator realleges and incorporates by reference paragraphs 1 though 50 above as if fully set forth herein.

52. Pursuant to various trade documents and applicable law, HSBC and Fridator were contractually obligated to one another to pay monies owed on the FX transactions on the settlement date for each transaction.

53. HSBC owes to Fridator the amount of $1,056,524 on the FX transactions.

54. By its actions and omissions as alleged above, HSBC has breached its contractual obligations to Fridator.

55. Fridator has fully performed its contractual obligations.

56. As a direct and proximate consequence of HSBC's breach of contract, Fridator has suffered and continues to suffer damages in an amount to be determined at trial.

**WHEREFORE**, plaintiff Fridator respectfully requests judgment against defendants Neuberger and HSBC as follows:

(a) Directing Neuberger to immediately return the wrongfully withheld funds to Fridator, together with any interest earned thereon;

(b) For the damages that Fridator has sustained as a result of Neuberger's wrongful conduct, including but not limited to the value of opportunities foregone because of Fridator's inability to access or use the funds that Neuberger withheld;

#1754271 v1
109775-68511

(c) For disgorgement of fees, commissions, and financial benefits that Neuberger received from or in connection with the FX transactions, and the award of all such funds to Fridator;

(d) Directing HSBC to pay to Fridator the proceeds owed on the FX transactions between HSBC and Fridator;

(e) For prejudgment interest on the foregoing amounts;

(f) For the costs and disbursements of this action, including attorneys' fees and expenses; and

(g) For such other and further relief as the Court may deem just and proper under the circumstances.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: New York, New York
February 10, 2012

**GIBBONS P.C.**
One Pennsylvania Plaza, 37th Floor
New York, New York 10119-3701
(212) 613-2000

By: _____
R. Scott Garley
Paul A. Saso

*Attorneys for Plaintiff The Fridator Trust*

## CERTIFICATE OF SERVICE

I, Lori V. Duignan, hereby certify that on February 10, 2012, I caused to be served a true and correct copy of the foregoing AMENDED COMPLAINT via electronic mail upon the following counsel of record:

> Quinlan Murphy
> Stroock & Stroock & Lavan LLP
> 180 Maiden Lane
> New York, New York 10038
> *Attorneys for Defendant*
> *Neuberger Berman LLC*

Dated: New York, New York
February 10, 2012

_____
Lori V. Duignan